UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-CR-272-SRC |
| | ) |
| DEREK J. PETTY, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S BRIEF IN ADVANCE OF TRIAL REGARDING CERTAIN ANTICIPATED EVIDENTIARY ISSUES THAT MAY ARISE AT TRIAL**

Defendant Derek J. Petty ("Petty"), by and through undersigned counsel, respectfully submits this brief in advance of trial regarding certain evidentiary issues the defense anticipates may arise at trial. To be clear, Petty is not seeking pretrial relief on the issues addressed herein. Rather, the purpose of this brief is to provide this Court with the benefit of legal authority in support of certain objections and/or evidentiary requests that may arise contemporaneously at trial.

**I.    Copies of Prescriptions Which Include the Word "ILLEGAL" on the Documents Are Inadmissible**

In discovery, the Government provided the defense with copies of written prescriptions alleged to be at issue in this case. Those copies included the word, "ILLEGAL," superimposed in large lettering numerous times on the face of each prescription. For example:



In preparing trial exhibits, the defense requested clean copies of the actual prescriptions allegedly submitted to the pharmacy—*i.e.*, copies which do not have the word "ILLEGAL" superimposed all over the documents. The Government represented that it does not possess copies of these prescriptions in their original state. Rather, the Government explained that the "ILLEGAL" lettering that appears on the face of each prescription at issue in this case is a security feature that appears when the original prescription paper is scanned or photocopied.

Nonetheless, to the extent the Government seeks to introduce these prescriptions at trial—as opposed to the original prescriptions in which the word "ILLEGAL" is not visible—the defense anticipates strenuously objecting to the admissibility of these documents on the following legal grounds—potentially among others—any one of which necessitates exclusion.

### A. Authentication

At trial, there will be no dispute that the prescriptions allegedly provided to the pharmacy at Schnucks did not have the word "ILLEGAL" visibly written on them in large block letters. Rather, according to the Government, "ILLEGAL" only became visible when the prescriptions were scanned and/or copied and the Government in its investigation apparently only obtained the copies provided to the defense—not the originals. To be clear, the issue before this Court is not about whether the Government was ever in a position where it could have obtained the originals or whether the pharmacy destroyed them. The only issue before this Court is whether the exhibits the Government seeks to admit at trial—which now display the word "ILLEGAL" repeatedly on them—are admissible.

Based on what the Government has indicated, Petty anticipates the Government will attempt to authenticate the prescriptions and to establish, through the testimony of one or more witnesses, that the watermark appears as a hidden security feature embedded within the

2

prescription itself—meaning it is invisible on the paper unless and until the original prescription is photographed and/or copied. But this method of authentication cannot be reconciled with the Federal Rules of Evidence and governing legal authority.

It is well settled that documents which "cannot be properly authenticated because of [] alterations are not admissible as duplicates under Rule 1004 of the Federal Rules of Evidence." *See Millenium Expressions, Inc. v. Chauss Marketing, Ltd.*, 2006 WL 288353 (S.D.N.Y. Feb. 6, 2006) (unpublished) (holding exhibits "altered…to link them to legal conventions" are "excluded unless offered in their unaltered form" because "[l]egal argument…is not evidence"); *see also United States v. Perlmutter*, 693 F.2d 1290, 1292-93 (9th Cir. 1982) (reversing conviction because evidence must be authenticated "under either Rule 901 or 902…certainly it is not enough that the documents present an aura of authentication") (internal quotations omitted).

Moreover, under the Best Evidence Rule, the original document must be admitted. *See* Fed. R. Evid. 1002. However, in certain instances, a duplicate may be introduced in the same manner as the original—but not where "a genuine question is raised as to the authenticity of the original" or where "it would be unfair to admit the duplicate in lieu of the original." *United States v. Stockton*, 968 F.2d 715, 719 (8th Cir. 1992); Fed. R. Evid. 1003. In this case, it has become clear that the copies of the prescriptions the Government seeks to introduce into evidence appear different as compared to the originals in one critical way: they now contain an unfairly prejudicial legal conclusion on the face of them that they are each "ILLEGAL." Indeed, under Federal Rule of Evidence 1001(e), these copies do not even constitute a "duplicate" which must be produced by a "process or technique that accurately reproduces the original." And this is even more concerning in this case because whether these prescriptions are, in fact, illegal is an ultimate issue that must

be decided by the jury in this case—which renders them categorically inadmissible. *See Millenium Expressions, Inc.*, 2006 WL at 288353.

If the Government proceeds as Petty anticipates, the documents present, at most, an "aura of authentication," but cannot be authenticated. *See Perlmutter*, 693 F.2d at 1292-93 ("it is not enough that the documents present an 'aura of authentication'"); *see also Millenium Expressions, Inc.*, 2006 WL 288353 (documents with legal conclusions are inadmissible because "[l]egal argument…is not evidence"). As such, these documents are inadmissible.

### B. Rule 403

Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002) ("'Unfair prejudice'…means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"); *see also United States v. Cody*, 114 F.3d 772, 777-78 (8th Cir. 1997) (finding trial court properly excluded evidence which would "confuse and mislead the jury").

This case turns largely on whether these prescriptions were legal or illegal. Thus, the fact that each prescription that the Government ostensibly intends to admit into evidence at trial displays the word "ILLEGAL" renders these documents patently inadmissible. In this case, the danger of unfair prejudice substantially outweighs the probative value. Indeed, one is hard-pressed to imagine anything more prejudicial in a federal criminal trial than the introduction of evidence that—in contrast to the original—visibly displays the very conclusion the Government hopes the jury will reach as to that particular piece of evidence. Furthermore, this would unambiguously

cause confusion of the issues. As a matter of law, "[c]onfusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." *United States v. Dennis*, 625 F.2d 782, 796–97 (8th Cir. 1980). In this case, the jury will be tasked with determining, *inter alia*, whether the prescriptions were fraudulent—and permitting the Government to introduce documents that include the legal conclusion that they are "illegal" is tremendously and unfairly prejudicial, and extremely confusing.

In the same way the defense cannot introduce evidence that displays legal conclusions—*e.g.*, "INNOCENT," "REASONABLE DOUBT," or "NOT A CRIME"—the Government should not be permitted to introduce evidence that visibly displays the legal conclusion that a document the Government contends is illegal is "ILLEGAL."

### C. Admission of These Documents Would Invade the Province of the Court and the Jury

A statement that a particular document alleged to be fraudulent is "illegal" is a legal conclusion that invades the exclusive province of this Court. *See United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999) (legal conclusion is "inappropriate matter for expert testimony"); *Aguillar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (matters of law are for the court's determination, not that of a witness); *Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 509-10 (2d Cir. 1977) (testimony consisting of legal conclusion inadmissible).

Furthermore, Petty is guaranteed the right to a fair trial by jury by the Sixth Amendment to the United States Constitution. Petty has pleaded not guilty to the charge against him and is unquestionably entitled to an impartial jury deciding whether the prescriptions at issue in this case are illegal. To allow introduction of these documents at trial would deprive him of this fundamental constitutional right.

There are a number of evidentiary objections to the admissibility of these prescriptions. But, at its core, this Court need simply conclude that the Government cannot introduce a document visibly displaying a legal conclusion that the document is "ILLEGAL" in a case where one of the ultimate questions the jury needs to be resolve is whether the document is, in fact, illegal.

Finally, it is unclear whether the Government was in a position to obtain the original prescriptions or whether the pharmacy destroyed the original prescriptions immediately upon receipt. However, that is of no moment with respect to the issue before this Court. Under the Federal Rules of Evidence and governing legal authority, the copies—which are visibly different from the originals in that the copies now display the word "ILLEGAL" on the face of each document and the originals did not—are either admissible or they are not. As a matter of law, they are not and no testimony or limiting instruction can alter this inescapable fact.

## II. Evidence and/or Testimony Concerning Petty's Criminal History Should Be Excluded Unless Petty Testifies

Petty moved in limine to exclude all evidence and testimony concerning his prior convictions. (*See* Doc. 95). This Court held the motion in abeyance to give the Government additional opportunity to respond. (*See* Doc. 104). The Government's response made clear that evidence concerning Petty's prior convictions would only be admissible as impeachment evidence in the event Petty exercised his right to testify in his own defense—thereby making his credibility an issue in this case. (*See* Doc. 105).

Thus, consistent with his motion in limine, in light of the Government's response, and in an effort to close the loop on this issue, Petty requests that the Government be precluded from introducing any evidence or testimony referencing his criminal history and his status on supervised release unless Petty chooses to testify at trial or unless the defense were to somehow open the door to this evidence in some other manner at trial.

6

### III.  Judicial Notice

Pursuant to Federal Rule of Evidence 201, this Court "may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." As a matter of law, this Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). When doing so in the context of a criminal case, this Court "must instruct the jury that it may or may not accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

Depending on testimony that may arise during trial, the defense may request this Court to take judicial notice of the following facts and is hereby providing this Court sources whose accuracy cannot reasonably be questioned:

1. <u>Levothyroxine is an FDA-approved pharmaceutical requiring a prescription</u>. *See* U.S. Food & Drug Administration, https://www.fda.gov/drugs/news-events-human-drugs/real-world-evidence-narrow-therapeutic-index-product-levothyroxine-reflects-therapeutic-equivalence (last accessed April 22, 2021) ("Levothyroxine is the most commonly prescribed thyroid hormone medicine used to treat hypothyroidism and is one of the most widely prescribed drug productions in the United States. Given this high prescription rate, the FDA approval of multiple generic products has provided patients with additional options for filling levothyroxine prescriptions and has reduced health care costs for millions of patients").

2. <u>Dexilant is an FDA-approved pharmaceutical requiring a prescription</u>. *See* U.S. Food & Drug Administration, https://www.accessdata.fda.gov/drugsatfda_docs/label/2016/208056lbl.pdf (last accessed April 22, 2011).

### IV.  Conclusion

Petty respectfully provides this Court this authority in support of anticipated evidentiary issues that may arise contemporaneously at trial.

7

Respectfully submitted,

**Margulis Gelfand, LLC**


*/s/ Ian T. Murphy*
JUSTIN K. GELFAND
IAN T. MURPHY
7700 Bonhomme Ave., Ste. 750
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
ian@margulisgelfand.com
COUNSEL FOR PETTY

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court which will serve a copy upon counsel for the United States.

>  */s/ Ian T. Murphy*
> JUSTIN K. GELFAND
> 7700 Bonhomme Ave., Ste. 750
> St. Louis, MO 63105
> Telephone: 314.390.0234
> Facsimile: 314.485.2264
> justin@margulisgelfand.com
> COUNSEL FOR PETTY