IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 4:19 CR 272 SRC |
| | ) | |
| DEREK PETTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT PETTY'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT

COMES NOW the United States of America, by and through the United States Attorney for the Eastern District of Missouri, Sayler A. Fleming, and Sirena Miller Wissler and Nauman Wadalawala, Assistant United States Attorneys for said District, and responds to defendant Petty's Motion to Dismiss Count One of the Indictment.

## STATEMENT OF RELEVANT FACTS

On April 3, 2019, a duly empaneled Grand Jury sitting in the Eastern District of Missouri returned an Indictment against defendant Derek Petty ("Petty") and a co-defendant, charging one count of Conspiracy to Acquire a Controlled Substance by Misrepresentation, Fraud, Forgery, or Subterfuge.  (Doc. #1).  At no time during the pendency of the case did the government seek a Superseding Indictment; as a result, the April 3, 2019 Indictment was, at all times relevant hereto, the operative charging instrument.

Petty first appeared before United States Magistrate Judge John M. Bodenhausen on April 17, 2019.  (Doc. #9).  He was advised of the charge against him and appointed an attorney.  (Doc.

#9, 12).  On April 19, 2019 again appeared before Magistrate Judge Bodenhausen, at which time Petty waived his right to a detention hearing.  (Doc. #22, 23).

On July 12, 2019, attorney Justin Gelfand entered his appearance on Petty's behalf.  (Doc. #48).  Mr. Gelfand represented Petty thereafter, up to and including the present.  On July 30, 2019, attorney Ian Murphy  also entered an appearance on Petty's behalf.  (Doc. #51).  Mr. Murphy, like Mr. Gelfand, represented Petty continuously thereafter.

On September 24, 2019, counsel filed a Motion for Bond to be Set (Reconsideration of Detention Order).  (Doc. #57).  Magistrate Judge Bodenhausen held a hearing on the motion on October 7, 2019.  (Doc. #59).  On October 15, 2019, Magistrate Judge Bodenhausen issued an Order Denying Reconsideration of Detention. (Doc. #65).

On October 10, 2019, counsel filed three pre-trial motions on Petty's behalf.  More specifically, a Motion for Disclosure of Expert Witness(es), a Motion for Disclosure by the Government of its Intention to Rely upon Rule 404(b) Evidence, and a Motion for Hearing.  (Doc. #62, 63, 64).  Counsel did *not* file a Motion to Dismiss the Indictment, nor did counsel file a Motion for Bill of Particulars.  The matter was scheduled for jury trial on February 3, 2020.  (Doc. #78). On January 27, 2020, Petty moved to continue the trial date.  (Doc. #86).  The Court granted the motion and scheduled the trial for March 2, 2020.  (Doc. #87).  On February 13, 2020, the case was reassigned from United States District Judge Audrey G. Fleissig to this Court for trial.  (Doc. #89).  This Court set a March 10, 2020 trial date.  (Doc. #91).

The parties continued apace to prepare for trial, with Petty filing multiple motions *in limine*. (Doc. #93-99).  Both parties also filed proposed *voir dire* questions and jury instructions.  (Doc. #100-103).  Unfortunately, the COVID-19 pandemic intervened, necessitating the cessation of all in-person hearings district-wide.  After learning that his trial would be continued for health and

safety reasons, Petty filed a Motion for Bond to Permit Temporary Release Based on Global Pandemic.  (Doc. #108).  Shortly thereafter, Petty filed a supplemental brief in support thereof. (Doc. #110).   In an order dated March 31, 2020, Magistrate Judge Bodenhausen denied Petty's motion for temporary release. (Doc. #112)  Petty filed an appeal to this Court and, following a hearing conducted by telephone, this Court also denied Petty's bid for release.  (Doc. #123).

Following multiple continuances occasioned by the pandemic, the instant case proceeded to trial on April 27, 2021.  (Doc. #166).  At the conclusion of the government's evidence, Petty moved for judgment of acquittal.  (Doc. #171).  His motion was denied.  (Doc. #171).  After Petty presented evidence on his own behalf, he renewed his motion for judgment of acquittal.  (Doc. #171).  Once again, the Court denied the motion.  (Doc. #171).  Thereafter, Petty – for the first time – made an oral motion to dismiss the indictment alleging that it was fatally defective for failure to state an offense. (Doc. #171).  During a bench conference, the government noted that Federal Rule of Criminal Procedure requires such a motion to be made, if at all, *prior to trial*.  Fed. R. Crim. P. 12(b)(3)(B).  Counsel for Petty disputed the applicability of the rule and, when questioned regarding the timing of the motion, acknowledged that they had not raised the motion earlier because it had not been in their client's best interest to do so.  After a recess allowing for both the Court and the government to conduct limited research on the issue, the Court denied the motion, ruling that it was time-barred by Rule 12(b)(3)(B) and that the Indictment was sufficient in any event.  Petty now renews his motion to dismiss the indictment.

## ARGUMENT

Petty's motion appears to assert the following: (1) despite the fact that the Federal Rules of Criminal Procedure clearly require that a motion to dismiss under Rule 12(b)(3) be brought before trial, he is entitled to review, and ultimately a remedy, because there is "good cause" to

excuse its untimeliness; (2) count one of the Indictment provides insufficient notice of the offense charged; and (3) the Indictment is fatally defective because it lacks a specific citation to Title 21, United States Code, Section 846.

These arguments are inter-related, and the government shall address each in turn.

**I.**      **Rule 12(b)(3) requires that a motion to dismiss an indictment for failure to state an offense be brought before trial, rendering Petty's motion untimely.**

Pretrial motions, including their timeliness, are governed by Rule 12 of the Federal Rules of Criminal Procedure.  Rule 12(b)(3)(B) requires that objections claiming defects in an indictment must be raised before trial if the basis for the motion is reasonably available at the time and the motion can be decided without a trial on the merits. Fed. R. Crim. P. R 12(b)(3)(B). A claim that the indictment failed to state an offense is included in the non-exhaustive list of motions that must be made before trial. Fed. R. Crim. P. R 12(b)(3)(B)(v).

Contrary to the defendant's claim that a motion alleging that the indictment failed to state an offense can be raised at any time during litigation, the Supreme Court definitively held the contrary in United States v. Cotton, 535 U.S 625 (2002). In Cotton, the Court stated that the fact that an indictment is defective 'does not affect the jurisdiction of the trial court to determine the case presented by the indictment.' Cotton, 535 U.S. at 631. The Court clearly stated that it had abandoned the view that indictment defects were jurisdictional in nature. *Id.* While a jurisdictional motion may be made at any time while the case is pending (Fed. R. Crim. P. R 12(b)(2)), non-jurisdictional issues, like failure to state an offense, must be made before trial. Fed. R. Crim. P. R 12(b)(3). Any confusion or controversy remaining in the aftermath of Cotton was clarified by the 2014 amendment to Rule 12(b)(3)(B).

The 2014 amendments to Rule 12 are accompanied by a number of notes, including one that describes the removal of in Rule 12(b)(3)(B) that had previously allowed the court to hear a

claim that the indictment failed to state an offense at any time while the case is pending. Citing Cotton, the Advisory Committee Notes to the 2014 Amendments to Rule 12 specifically explain, "[t]he Supreme Court abandoned any jurisdictional justification" for the exception that allowed failure to state an offense claims to be heard at any time.   Fed. R. Evid. 12, Advisory Committee Note to 2014 Amendments.  Both the plain language of Rule 12(b)(3) and the Cotton case make it abundantly clear that a motion under Rule 12(b)(3)(B)(v) claiming that the indictment failed to state an offense must be brought before trial because this issue is not jurisdictional.   As a result, Petty's motion is untimely.  See, United States v. Bankston, 820 F.3d 215, 228 (6th Cir. 2016)("the current rule states that a failure to file a 12(b)(3) motion prior to trial – including, a motion alleging a failure to state an offense – is "untimely," but that a court may nonetheless "consider [the objection] if the party shows good cause."); United States v. Arredondo, No. 5:19-CR-50042-JLV, 2019 WL 8405384, at *2 (D.S.D. Oct. 16, 2019), report and recommendation adopted, No. CR. 19-50042-JLV, 2020 WL 729282 (D.S.D. Feb. 13, 2020), aff'd, 996 F.3d 903 (8th Cir. 2021)("defect in the indictment, such as lack of specificity or failure to state an offense, must be raised by pretrial motion if the basis for the motion is then readily available and the motion can be determined without a trial on the merits."); United States v. Willis, 844 F.3d 155, 162, 65 V.I. 489, 499 (3d Cir. 2016)(Federal Rule of Criminal Procedure 12(b)(3)(B)(v) authorizes a defendant to lodge a *pretrial* challenge to the sufficiency of an indictment for "failure to state an offense.")(emphasis added).[1]

---

[1] In 2019, the Second Circuit joined a chorus of circuits cautioning that a motion to dismiss for failure to state a claim must be raised prior to trial.

> The categories of motions that must be made before trial are those that assert "a defect in instituting the prosecution," Fed. R. Crim. P. 12(b)(3)(A) (2014), or assert "a defect in the indictment," *id.* Rule 12(b)(3)(B). As amended in 2014, Rule 12(b)(3) provides "a

Petty argues that good cause excuses his delay such that he is entitled to an exception outlined in Rule 12(c)(3).  In this regard, it appears that Petty's primary argument is that he lacked sufficient notice of the charge against him. This argument flies directly in the face of assertions made by counsel in open Court at the time the motion was first made.  At that time, counsel acknowledged that this was "not a notice issue" and admitted under questioning by the Court that Petty had never expressed any confusion or argued any lack of notice at any point during the two years this case was pending.   Petty's motion to dismiss reads as if both Petty and counsel were hapless neophytes who were hopelessly confused as to the reasons the Petty was arrested, charged, and incarcerated for two years.[2]  Moreover, Petty's current claim that he was somehow confused about the charge against him is belied by his numerous pre-trial motions, as well as his failure to

---

nonexclusive list of commonly raised claims under each category." Advisory Committee Note (2014) ("2014 Advisory Note"). The examples include "an error in the grand-jury proceeding," Rule 12(b)(3)(A)(v), and the indictment's "failure to state an offense," *id.* Rule 12(b)(3)(B)(v). *See also* 2014 Advisory Note (noting that prior language allowing a motion to dismiss for failure to state an offense to be made at any time, on the theory that that failure was "jurisdictional," was removed in light of the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625, 629-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), that such a flaw does not implicate the court's jurisdiction).

If a motion falling within Rule 12(b)(3) is not made before trial (or before such pretrial deadline as may be set by the court for such motions), it is "untimely." Fed. R. Crim. P. 12(c)(3) (2014). If the motion is untimely, the court may nonetheless entertain it if the movant shows "good cause" for his failure to make it prior to the deadline.

United States v. O'Brien, 926 F.3d 57, 82–83 (2d Cir. 2019)

---

[2] The timing of Petty's motion to dismiss raises an interesting paradox.  If, as counsel suggests, the Indictment was so utterly defective that Petty had no idea what offense he was charged with, one wonders why this motion was not filed in July 2019 when counsel entered their appearances, or shortly thereafter.

respond or object to the government's proposed jury instructions (filed in March 2020), which accurately outlined the elements of the single offense with which Petty was charged.[3]  Perhaps most tellingly, Petty never filed a Motion for Bill of Particulars in an effort to obtain clarification as to the precise nature of the allegations against him.

> If a defendant believes that an indictment does not provide enough information to prepare a defense, then he or she may move for a bill of particulars.  The purpose of a bill of particulars is to inform the defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial.

United States v. Huggans, 650 F.3d 1210, 1220 (8th Cir. 2011)(internal citation and quotations omitted).  It strains credulity to suggest that despite having filed no fewer than *eleven* motions prior to trial, counsel failed to seek a bill of particulars on Petty's behalf in an effort to clarify the "confusion" they now claim persisted throughout the proceedings.

In order to establish good cause in an attempt to excuse the roughly two-year delay in bringing the motion to dismiss, Petty bears the burden of showing cause for the untimeliness and that the alleged error resulted in prejudice. United States v. Fry, 792 F.3d 884, 888 (8th Cir. 2015), United States v. Williams, 774 Fed. Appx. 871, 876 (5th Cir. 2019). Petty does not so much as allege that any error that may be contained in the indictment prejudiced him in any way.  Petty does not, for example, claim that counsel was unable to prepare for trial adequately or that he would have employed a different strategy if only he had correctly understood the charge against him.  Indeed, a review of counsel's performance at trial reveals that counsel, and Petty, knew

---

[3] During jury instruction conference, counsel struggled to respond to the Court's questions regarding their failure to raise any objections to the government's proposed instructions prior to trial, ultimately acknowledging that they had simply neglected to review the instructions.  The Court noted in response that counsel had been in possession of the proposed instructions for more than one year and that their proffered justification was insufficient.

*precisely* what the charge was.  Claims to the contrary are specious at best.[4]  Petty wholly fails to carry his burden to demonstrate that he was prejudiced by any alleged defect in the Indictment.

Petty's motion is untimely under Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure and <u>Cotton</u>.  Additionally, Petty has failed to meet his burden to establish that his untimeliness should be disregarded for good cause. As a result, Petty's motion should be denied.

**II.**    **<u>The Indictment is sufficient pursuant to Rule 7 of the Federal Rules of Criminal Procedure and provided adequate notice as to the nature of the charge and the petit jury's guilty verdict rendered harmless any alleged error in the Grand Jury</u>**

Even assuming, *arguendo*, that this Court elects to consider Petty's motion on the merits, the motion fails.  Interestingly, despite arguing that the Indictment in the instant case is fatally defective and fails to state an offense, Petty does not so much as cite to Federal Rule of Criminal Procedure 7, which governs the contents of indictments.[5]   Rule 7 provides,

> [t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a

---

[4] Indeed, it would have been patently unethical for counsel to have proceeded to trial in any matter without a full knowledge and understanding of the charge against their client.

[5] This omission is particularly interesting given that the Court *specifically directed* counsel to that very rule during the in-court arguments on the motion to dismiss.  During that discussion, counsel admitted that he had not consulted or even reviewed Rule 7 prior to asserting that the Indictment is fatally defective.

particular DNA profile, as that term is defined in section 3282.

Fed. R. Crim. P. 7.  In open Court, counsel acknowledged that the Indictment in the instant case contained a written statement of the essential facts constituting the offense charged, and that it was signed by an attorney for the government.  More importantly, counsel conceded that this was "not a notice issue" and that Petty, in fact, had sufficient notice of the charge asserted against him.

An indictment is ordinarily sufficient if it 'tracks the statutory language.' United States v. Wearing, 837 F.3d 905, 910 (8th Cir. 2016) (citing United States v. Tebeau, 713 F.3d 955, 962 (8th Cir. 2013). The Indictment in this case clearly tracks the statutory language in Title 21, United States Code, Section 843(b)(3), and further references the conspiracy language contained in Section 846.  There is no requirement that the indictment use the exact language found in the statute, so long as "by fair implication it [the indictment] alleges an offense recognized by law." United States v. Boykin, 794 F.3d 939, 944 (8th Cir. 2015). "[A] court may not insist that a particular word or phrase appear in the indictment when the element is alleged in a form which substantially states the element." Id. at 944-45.

> The validity of an indictment is determined "from reading the indictment as a whole and ... by practical, not technical considerations." *United States v. Markham,* 537 F.2d 187, 192 (5th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977) (citations omitted)."The test is not whether the indictment could have been framed in a more satisfactory manner but whether it conforms to minimal constitutional standards."

United States v. Perkins, 748 F.2d 1519, 1524 (11th Cir. 1984).  Specifically

> [w]ith respect to conspiracies, "[a]n indictment under 21 U.S.C. § 846 ... is sufficient if it alleges: a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated, even if it fails to allege or prove any specific overt act in furtherance of the conspiracy."

United States v. Forrester, 616 F.3d 929, 940 (9th Cir. 2010).  The United States Court of Appeals for the Eighth Circuit has upheld as sufficient an indictment containing language nearly identical to the Indictment in the instant case.  After a jury convicted him of conspiracy charges, defendant Darwin Huggans filed an appeal alleging, among other things, that the indictment was insufficient. The Court of Appeals disagreed, first outlining the text of the conspiracy count.

> *Count I*
> The Grand Jury charges that: Beginning in 2000 and continuing up to the date of this Indictment, in the Eastern District of Missouri and elsewhere, DARWIN MARKEITH HUGGANS, a/k/a/ Mark Huggans, the defendant herein, did knowingly and intentionally conspire, combine, confederate and agree with other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to knowingly and intentionally distribute and possess with the intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).
>
> All in violation of Title 21, United States Code, Sections 846 and 841(a)(1); and
>
> The quantity of cocaine involved in the offense was in excess of five (5) kilograms, thereby making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(ii)(II).

United States v. Huggans, 650 F.3d 1210, 1216 (8th Cir. 2011).  Notably, the indictment was silent as to the elements of "conspiracy."  Still, and despite the *seven year* span encompassed by the conspiracy charge, the Court of Appeals concluded that the was sufficient, noting,

> an indictment provides sufficient "specific facts constituting the offense" if it apprises the defendant of the time frame of the alleged drug conspiracy and the type of drugs involved. *United States v. Peterson,* 867 F.2d 1110, 1114 (8th Cir.1989), *overruled on other grounds by United States v. Richardson,* 439 F.3d 421 (8th Cir.2006); *see also United States v. Olderbak,* 961 F.2d 756, 760 (8th Cir.1992). Indeed, in *Peterson,* we found sufficient an indictment containing language nearly identical to that at issue here.

Id. at 1218.  The Eighth Circuit has also affirmed convictions based upon indictments which

failed to include the requisite mental state.  See, United States v. Starr, 584 F.2d 235, 237 (8th

Cir. 1978) (indictment not fatally defective where it failed to include the words "knowingly or

intentionally" in alleging a drug conspiracy).

      Petty's feigned confusion about the substance of the charge against him is unconvincing.

Moreover, even if – as he suggests – the Grand Jury somehow mistakenly found probable cause

that Petty committed some other offense or even a "nonexistent" offense, the petit jury's guilty

verdict renders any such error harmless.  It is well-settled that,

> [e]xcept in cases involving racial discrimination in the composition
> of the grand jury, a guilty verdict by the petit jury generally
> excuses errors at the grand jury level that are 'connected with the
> charging decision....'  *Hintzman,* 806 F.2d at 843 (*quoting United
> States v. Mechanik,* 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50
> 1986)).   A petit jury's 'subsequent guilty verdict not only means
> that there was probable cause to believe that the defendant[
> ][was] guilty as charged, but that [he was] in fact guilty as charged
> beyond a reasonable doubt. *Kouba,* 822 F.2d at 774
> (*quoting Mechanik,* 475 U.S. at 70, 106 S.Ct. 938).

United States v. Wilson, 565 F.3d 1059, 1070 (8th Cir. 2009)(internal quotations omitted).  As a

result, "[a]ssuming for argument's sake there was an error at the grand jury level in obtaining the

indictment, any error was harmless because the [jury] found there was sufficient evidence to

convict [defendant] beyond a reasonable doubt."  United States v. Bowie, 618 F.3d 802, 818 (8th

Cir. 2010).  In fact,

> [e]ven if errors in the grand jury proceedings would have justified
> the district court in dismissing the indictment prior to trial,
> the petit jury's subsequent conviction of [defendant] rendered these
> errors harmless beyond a reasonable doubt.

United States v. Vincent, 416 F.3d 593, 601 (7th Cir. 2005).   See also,  United States v. Taken

Alive, 513 F.3d 899, 903 (8th Cir. 2008) ("dismissal argument also lacks merit because the petit

jury ultimately found [defendant] guilty. . . Even if the alleged grand jury error occurred, this error is rendered harmless because it resulted in no prejudice").

This Court should decline to entertain or even consider any claims that the Grand Jury was not properly instructed or hypothetically erred in issuing a true bill.

> [A]fter a petit jury's guilty verdict [the court] will not consider a defendant's arguments regarding errors affecting only the grand jury's finding of probable cause, because those claims are mooted by the petit jury's findings of guilt.

United States v. Hillman, 642 F.3d 929, 936 (10th Cir. 2011).

> The petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989)(internal quotation omitted).

The language contained in the Indictment provides sufficient notice to Petty of the nature of the charge against him.  Counsel has previously acknowledged that this was "not a notice issue" and Petty offers no suggestion that he was prejudiced by the alleged defects in the Indictment. Any claim that Petty (or his counsel) willingly proceeded to jury trial without a full understanding of the charge against him should draw particular scrutiny from this Court.  Moreover, to the extent that Petty has called into question the sufficiency or propriety of the Grand Jury proceedings that led to his indictment, the petit jury's guilty verdict has rendered any alleged errors (which the government does not concede occurred) harmless.[6]   As a result, his motion to dismiss the indictment lacks merit and should be denied in its entirety.

---

[6] Petty has not alleged that the petit jury was improperly instructed or that the verdict director did not contain each essential element of the offense charged.

III.   <u>**Any error or omission in citations contained in the Indictment are immaterial**</u>

It appears that Petty last suggests that the Indictment contains fatal defects in the form of missing or incorrect statutory citations.  The Indictment alleged that Petty and Sierra Price "did knowingly and intentionally combine, conspire, confederate, and agree with each other" to commit an offense against the United States, specifically, to "acquire and obtain a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge in violation of Title 21, United States Code, Section 843(a)(3)."  (Doc. #1).  While the Indictment arguably fails to give the "official or customary citation of the statute . . . that the defendant is alleged to have violated" inasmuch as it fails to cite specifically to 21 USC §846, the omission is immaterial.

As the Court correctly noted during the parties' in-court debate on Petty's motion to dismiss the indictment, Fed. R. Crim. P. 7(c)(2) specifically addresses a situation in which an indictment contains an incorrect or missing citation.  Rule 7(c)(2) provides, "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."

The United States Court of Appeals for the Eighth Circuit has examined cases in which an Indictment alleging a conspiracy failed to cite specifically to 21 USC §846.  In <u>United States v. Buchanan</u>, 574 F.3d 554 (8th Cir. 2009), defendant Buchanan alleged that his "Indictment failed to state an offense because it did not directly cite 21 U.S.C. § 846, which criminalizes attempt."[7] <u>Id</u>. at 565.  First noting that, "[a]n indictment that is challenged after jeopardy attaches, will be upheld unless [the indictment] is so defective that by no reasonable construction can it be said to charge the offense," the Eighth Circuit Court went on to observe that "[a]n indictment need not use the precise language in the statute as long as the Indictment, by fair implication, alleges an

---

[7] <u>Buchanan</u> was decided in 2009 – five years *before* Fed. R. Crim. P. 12(b)(c) was amended to reflect the Supreme Court's holding in *Cotton*.

offense recognized by the law." <u>Id</u>. (internal citations and quotations omitted).  The <u>Buchanan</u> Court correctly noted that Fed. R. Crim. P. 7 "generally requires an indictment to give the official citation of the statute or other provision of law that the defendant is alleged to have violated," but also observed Rule 7(c)(3), which provides that an citation error or omission does not constitute grounds for dismissal. <u>Id</u>. at 565-66.

In affirming the district court's denial of Buchanan's motion to dismiss the indictment based upon its failure to cite Section 846, the Court of Appeals wrote,

> Buchanan has not indicated how the omission of the statutory citation misled him. A reasonable construction of the Indictment indicates that it charged the offense of attempt to manufacture a controlled substance, and the words "did knowingly and intentionally attempt to manufacture" clearly set forth the elements of the intended charge of attempt. We therefore hold that the indictment fairly informed Buchanan of the charges against him and allows him to plead double jeopardy as a bar to a future prosecution for attempt to manufacture methamphetamine. The Indictment was therefore sufficient.

<u>Id</u>. at 566.  <u>See also</u>,  <u>United States v. Gordon</u>, 641 F.2d 1281, 1285 (9th Cir. 1981)(omission of statutory citation from indictment not fatal where defendant is not misled).

In <u>Tanksley v. United States,</u> 321 F.2d 647, 648-49 (8th Cir. 1963), the United States Court of Appeals for the Eighth Circiut considered an appeal by a defendant who had been convicted of an offense grounded upon an indictment containing inconsistent statutory citations.  There, the court wrote that "the statute on which an indictment is founded must be determined from the facts charged[,] and the facts as pleaded must bring the offense charged within one statute, although another statute is referred to in the indictment." (citing *Masi v. United States*, 223 F.2d 132 (5th Cir. 1955)). In <u>Tanksley</u>, the court determined that the defendant had failed to established prejudice as a result of the citation error, because the error did not render the defendant's subsequent sentence "ambiguous, or of uncertain premise." 321 F.2d at 648.

In the instant case, the Indictment charged that Petty and Sierra Price "knowingly and intentionally combined, conspired, confederated, and agreed" with each other to obtain a controlled substance by misrepresentation, fraud, forgery, and subterfuge.  Just as the Buchanan indictment referenced "attempt," the Indictment in the instant case references conspiracy. As a result, the Indictment "contains all of the essential elements of the offense charged" and "fairly informs the defendant of the charges against which he must defend." United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008).   Further, the Indictment is sufficient to "allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." Id.  In short, the Indictment against Petty was sufficient and properly notified him of the offense with which he was charged, notwithstanding the absence of a specific reference to Section 846.

Petty has provided this Court with no evidence tending to suggest that he was not sufficiently informed of the charges against him. Because the citation error resulted in no prejudice, Rule 7(c)(2) definitively provides that the error does not constitute grounds for dismissal of the indictment or a reversal of the conviction. Fed. R. Crim. P. R 7(c)(2).

### CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant Petty's motion to dismiss count one of the indictment.

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY

/s/ Sirena Miller Wissler
SIRENA MILLER WISSLER #55374MO
NAUMAN WADALAWALA #65252MO
Assistant United States Attorneys
111 S. 10th Street, 20th Floor
St. Louis, MO  63102

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Justin Gelfand and Ian Murphy, Attorneys for Defendant.


/s/ *Sirena Miller Wissler*
SIRENA MILLER WISSLER #55374MO