UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19-CR-272-SRC |
| ) | |
| DEREK J. PETTY, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**[1]

Defendant Derek J. Petty ("Petty"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Petty respectfully requests a sentence of time served as it is sufficient and not greater than necessary.

The 40-year-old man who stands before this Court for sentencing has not lived an easy life. Petty was born in St. Louis, Missouri and was raised by his mother, Doris. Petty does not know who his father is. When he was young, Petty's mother became involved with a man who physically abused Petty for many years. Although his mother was aware of the abuse, she did not report it out of fear of retaliation. Making matters worse, Petty's older brother was also physically abusive to both Petty and his mother. Petty remained close with his mother until she passed away in 2005 from breast cancer.

Petty's tough upbringing put him in a position to fail, leading him to make some bad decisions which are reflected in his criminal history. However, after his release from his previous

---

[1] In previous filings, Petty makes clear his position that the indictment in this case did not charge an offense. As such, Petty maintains that any sentence imposed pursuant to this flawed indictment would be unjustified and greater than necessary. In filing this sentencing memorandum and motion for downward variance, Petty does not waive his arguments concerning the sufficiency of the indictment which remain pending. (*See* Docs. 190, 191, and 201).

incarceration, Petty had truly turned things around. Although suffering from significant pain related to leg injuries (he has rods and pins in his right leg), Petty was working hard rehabilitating homes for rental and sale. Petty was assisted in this venture by Justine Petersen, a local non-profit whose mission is to connect institutional resources with the needs of low-to moderate-income individuals and families, helping them to build assets and create enduring change. Petty was a success story for Justine Petersen, significantly raising his credit score and purchasing and rehabilitating real property and diligently repaying his loans. As is reflected in a letter being submitted for this Court's review, Justine Petersen's founder and CEO, Robert Boyle, sincerely looks forward to the day Petty can return to his work with the organization. Indeed, Boyle explains that Justine Petersen "is committed to supporting Derek whether as an employee or as a client business owner (probably both)." Boyle notes, "[o]ur community requires Derek. His integrity, grit and charitable instincts make him one who will propel our [Justine Petersen] mission and enhance our larger community."

In addition to his admirable work with Justine Petersen, Petty had also started a gathering place for troubled youth to give them a safe place to be kids and to avoid falling prey to the perceived allure of gangs, drugs, or alcohol. When he became incarcerated this, of course, had to be put on hold.

Petty also has four children whom he looks forward to more meaningfully reconnecting with following his incarceration. Derek Petty, Jr. is 22 years old and was involved in a car accident in 2015 that left him paralyzed. He lives in Texas, but Petty maintains a close relationship with him. Petty's daughter, Derena, is 20 years old and attends Harris Stowe State University. Petty has a close relationship with her and, prior to his incarceration for the alleged offense that brings him before this Court, they spoke regularly. Petty also has two young children, aged 14 and 7. Prior to

his incarceration, his 7-year-old son lived with him. However, his son and his mother have since moved to Arizona. Petty looks forward to one day again playing an active role in his son's life.

It is against this backdrop that Petty respectfully requests that this Court impose a sentence of time served. He has been in federal custody for nearly 2 and a half years, during a global pandemic which made this lengthy period of incarceration all the more trying as it imposed significant restrictions on visitors, among other things.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Petty as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

**I.      Procedural Background**

On April 3, 2019, a federal grand jury in the Eastern District of Missouri returned a one-count indictment, which alleged:

> Beginning on an unknown date, but including the period between April 2018 and December 2018, within the Eastern District of Missouri, the defendants, DEREK J. PETTY and SIERRA PRICE, did knowingly and intentionally combine, conspire, confederate, and agree together with each other to commit the following offense against the United States: to acquire and obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, and subterfuge, in violation of Title 21, United States Code, Section 843(a)(3) and punishable under Title 21, United States Code, Section 843(d)(1).

(Doc. 1).

Petty pleaded not guilty and proceeded to trial. On April 30, 2021, the jury found Petty

3

guilty of the crime of "conspiracy to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, or deception as charged in Count I of the Indictment." (Doc. 179).

On July 2, 2021, the Probation Office issued its disclosure Presentence Investigation Report ("PSR"). (Doc. 197). On July 30, 2021, Petty filed his objections to the PSR. (Doc. 201). The Government did not file any objections to the PSR nor did it file a response to Petty's objections to the PSR.

Sentencing is scheduled for September 8, 2021. (Doc. 200).

## II.     Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . . .. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . . .. The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . . .. The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . . .. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . . .. As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

4

### III.     Advisory Sentencing Guidelines

Petty maintains his objections to the disclosure PSR's calculations of the advisory Sentencing Guidelines in this case. (*See* Doc. 201). Specifically, Petty objects, *inter alia*, to the PSR's conclusion that the Base Offense Level in this case is 24. (*See* Doc. 197 at ¶ 17). Petty was not charged with a violation of 21 U.S.C. § 846 and, therefore, USSG §2D1.1 is not relevant in arriving at the appropriate base offense level in this case. While Petty maintains that he was not charged with any offense, the Indictment cites 21 U.S.C. § 843—although the Indictment does not allege every essential element of that offense—which, pursuant to USSG §2D2.2(a), has a Base Offense Level of 8, and the Sentencing Guidelines do not allow this number to be adjusted upwards based on alleged drug quantity or converted drug weight.

For these same reasons, the PSR's assertion that the Adjusted Offense Level and Total Offense Level in this case is 24 is similarly incorrect. (Doc. 197 at ¶¶ 22 and 25). Petty was not charged with violating Section 846. Even assuming, *arguendo*, that Count 1's reference to Section 843 suffices to charge Petty with violating that statute (even though Count 1 does not allege all essential elements of that offense), the Adjusted Offense Level and Total Offense Level should be 8—*not* 24.

Because the Total Offense Level in this case is, at most, 8 (Petty in no way waives his arguments that the Indictment failed to allege any offense) based on the Indictment's reference to Section 843(a)(3). And a Total Offense Level of 8, coupled with Petty's Criminal History Category of VI, results in a Guideline Imprisonment Range of 18 to 24 months' imprisonment.

### IV.     A Downward Variance is Warranted

Petty has been in federal custody for nearly two and a half years. As such, if this Court were to sustain Petty's objections to the PSR and conclude that the Guideline Imprisonment Range

5

is 18 to 24 months, Petty's requested sentence of time served would constitute a within-Guidelines sentence. However, if this Court were to overrule Petty's objections to the PSR, this Court should nonetheless conclude that a downward variance is warranted in this case.

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Based upon a consideration of the statutory sentencing factors set out in 18 U.S.C. § 3553(a), a downward variance is warranted in this case.

Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists numerous factors that a sentencing court must consider. Especially relevant to this case, and supportive of this motion for a downward variance, are the following factors:

    A.    <u>The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)</u>

Petty is a 40-year-old man who has lived a difficult life, by any measure. He suffered abuse at the hands of his mother's boyfriend and from his own brother. Petty never met his father and he fell in with the wrong crowd at a young age and began making some bad decisions exacerbated by addiction.

Nonetheless, Petty persevered. In the years leading up to his arrest for the offense which brings him before this Court, he had completely turned his life around. He was working with children and helping to create and maintain a safe environment for them to prosper away from the streets that had led Petty astray at a young age. Petty was also working closely with the Justine Petersen organization. With Justine Petersen, Petty worked hard to raise his credit score from zero to 626 in less than a year.

As Justine Petersen's founder and CEO, Robert Boyle, explains in a letter being submitted

to this Court, Justine Petersen "was and remains all in with, and bullish on, Derek." Indeed, Boyle makes clear that it is his intention to continue working with Petty both as a client and as an employee upon his release from any period of incarceration ordered by this Court. Boyle has maintained contact with Petty during his imprisonment for the alleged offense which brings him before this Court and notes that Petty has helped fellow inmates to learn about the "value and method of credit score building as a way to enhance their financial lives." Based on his observations of Petty both before and during his most recent imprisonment, Boyle explains that Petty is "refusing to allow his current circumstances to deflect from his remaining affirmative and positive about his future." Boyle describes Petty as being "filled with goodness" and possessing "dignity."

As is made clear by Boyle's letter and by Petty's work while in federal custody with his fellow inmates, Petty has a lot of promise and will work tirelessly to get back on his feet following his release. He will have stable employment and he will never find himself before this, or any other, Court ever again. Petty will be there for his children, and he will be there for himself.

    B. <u>The Need for The Sentence Imposed – 18 U.S.C. § 3553(a)(2)</u>

The advisory Sentencing Guidelines make clear that this Court should consider the need for any sentence imposed to reflect the seriousness of the offense, to afford deterrence to criminal conduct, and to protect the public. In this case, a sentence of time served achieves all these goals.

Petty has served nearly two and a half years in federal custody. A sentence of time served is not, in this case, a slap on the wrist and unquestionably reflects the seriousness of the offense. Further, this sentence will certainly deter and protect the public from future criminal conduct. Petty is not a defendant who will recidivate. Prior to his incarceration, he was on the right track and, thankfully, that right track eagerly awaits him upon his release. Petty's access to the support

7

provided by Justine Petersen and Rob Boyle is as unique as it is powerful. Petty will not be put into a position to fail—he will land in a position to succeed, and he will seize that opportunity.

Furthermore, sentencing courts often consider a defendant's age when considering this Section 3553(a) factor. Indeed, there is an abundance of legal authority where courts have given notably less weight to the Sentencing Guidelines in recognition of the fact that older individuals, some even as young as 40, are far less likely to commit additional crimes. *See* United States Sentencing Commission, *Recidivism: Criminal History Computation of the Federal Sentencing Guidelines* (2004); *see also United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. 2005) (observing that those defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants"). The Sentencing Commission releases such empirical studies precisely so that, in cases such as this, the Court can include these facts in its consideration of a fair sentence. At age 40, Petty will not recidivate.

        C.        The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)

A sentence of time served in this case would satisfy Congress' mandate that sentencing courts should aspire to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The PSR concludes that Petty and codefendant Sierra Price are equally culpable in the instant alleged offense. (*See* Doc. 197 at ¶ 11). And Price was recently sentenced to a term of two years' probation. (*See* Doc. 187). Petty has already served a far more time behind bars than his equally culpable codefendant and this Court should take this into consideration when fashioning a sentence that is sufficient, but not greater than necessary. Furthermore, just yesterday, a defendant in this courthouse was sentenced to two years' probation for the charge of obtaining a controlled substance by fraud, deception, or subterfuge, related to her stealing of hydrocodone and oxycodone

8

from DePaul Hospital during a yearlong period while employed as a nurse. *See United States v. Powell*, 4:19-CR-856-RLW (E.D. Mo.). This Court should aim to avoid unwarranted sentencing disparities, and a sentence of time served will accomplish just that.

V.     **Conclusion**

One of the toughest realities to accept at any age is that we, as humans, cannot go back in time to make better decisions. We must accept the decisions we make and the consequences of those decisions. But there will never be a defendant standing before this Court who is as committed as Petty to never finding himself anywhere close to this situation ever again.

A sentence of time served in this case is not a slap on the wrist—it is, instead, the appropriate sentence in this case taking into account all relevant considerations. For all the reasons set forth in this memorandum and in the letter submitted for this Court's consideration, Petty appeals to this Court's discretion to impose a sentence of time served as it is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Ian T. Murphy*
JUSTIN K. GELFAND, # 62265
IAN T. MURPHY, #68289
7700 Bonhomme Avenue, Suite 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
**Attorneys for Petty**

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court, and that all parties will receive notice of this filing through this Court's electronic filing system.

*/s/ Ian T. Murphy*
JUSTIN K. GELFAND, # 62265
IAN T. MURPHY, #68289
7700 Bonhomme Avenue, Suite 750
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
ian@margulisgelfand.com
***Attorneys for Petty***